Good morning, Your Honors. May it please the Court, Rahla Pathak for Pamela Avecilla and Sean Bailey. The District Court, and I'd like to reserve three minutes for rebuttal, but I'll keep an eye on my time. The District Court's arbitration ruling in this case must be reversed for either of two independent reasons. First, the Court failed to require defendants to show that plaintiffs knew, or even should have known, that an arbitration clause existed. And second, the Court refused to consider whether the arbitration clause might be unconscionable. That violates two bedrock principles of the Federal Arbitration Act. First, that parties can only be compelled to arbitrate when they've agreed to arbitrate. And second, that unconscionability is always an available defense to mandatory arbitration. Now, to be clear, the Court's ruling resulted from one common error, which is that it believed that ERISA somehow trumps the FAA, and in particular that ERISA overrides Section 2 of the FAA. So I'd like to just start there briefly. Let me ask you a little basic question first. So the arbitration clause was added in 2022. Yes, Your Honor. Some of these claims date back to 2017, and some of the participants left before the arbitration clause was added in 2022. So how does that adding of the arbitration clause affect those earlier claims? So I think you're—well, so, I think the record is unclear about whether the plaintiffs in particular had left the plan before the arbitration clause was added. The Liberation's position, to be clear, is that it doesn't matter whether or not participants have left a plan or not. Their position is that at any point, if an arbitration clause is added, it can govern all claims that are brought in court, you know, after the arbitration clause is added. And we think that's a problem. We think that violates the basic agreement requirement of the Federal Arbitration Act. So I think that my friend and I probably differ on what the right answer to that question is. Our position is that it's not possible to consent to an arbitration clause if you don't know that it existed. And it's deeply problematic to have an arbitration clause that applies to claims that accrued years before the arbitration clause was ever added in the first place. So I think our position there is that it shouldn't control at all. I have another threshold question. Am I right that all of the claims in this case are on behalf of the plan? Yes, Your Honor. Well, the 502A2 claims are on behalf of the plan, Your Honor. We also proceeded under A3. And those are not on behalf of the plan, you're saying? No, A3 claims are brought in an individual capacity, but here the plaintiffs asserted both A2 and A3 claims. And what was the nature of the A3 ones that are in the individual capacity? So they're both regificatory duty claims premised on the same misconduct mismanagement of the plan. And so I think that the conduct and the legal theories are overlapping, but there's two subsections that are available to plaintiffs here. Do you agree that the plan itself has consented to the arbitration provision? I think we didn't dispute below that the plan consented, Your Honor. It's not clear to me that it's always possible to get a plan's consent or amendment, but here we didn't dispute that. So I think that we have to take that as a given. So then on that, with respect to that claim, you're really focusing on the unconscionability? No, Your Honor. So I think that with respect to A2, it's important that a participant consent because of the basic FAA requirement of an agreement. So in order to have an agreement, it's necessary under this court's precedent in Comer that it's the actual participant who consents, not the plan. In Comer, the A2 claims there were ones where this court was specific that it was the participant's consent that was necessary. The court didn't allow there to be substitute consent by the trustees. But there the participants were not a part of the contract at all that was at issue where the arbitration clause was. So here the arbitration clause would be in the agreement that these participants would be part of. In Comer, it was a separate agreement that the participants had nothing to do with with this financial company. So that's true, Your Honor, but I think that the problem here is that when participants don't even have notice that an arbitration clause exists, they can't possibly have consented to it. You don't have an agreement between a party and a counterparty. The plan arbitration provision is just a unilateral preference for arbitration rather than an agreement between two sides. In my mind, this is where it matters whether the claim is on behalf of the plan or the individual. If it's on behalf of the plan and the plan gave consent to arbitration, I have trouble seeing how further consent is needed. If there's actually a separate claim that's an individual claim, not on behalf of the plan, then it seems like I understand the argument better why you would need individual consent. But can you help me? It sounds like you think I'm thinking about that wrong, but can you tell me why? Yeah, so I think that the error there, Your Honor, is that an A2 claim is brought, it's true that it's brought on behalf of the plan, but it's brought by the participant. And I think that you need consent of both the plan and the participant in order for there to be mandatory arbitration. If I don't think Comer tells us that, do you have any other case that tells us that? Well, I think that the Supreme Court FAA cases tell us that you can't infer consent or use substitute consent. And here's what I mean by that. The Supreme Court has repeatedly rejected the idea that you can somehow infer the existence of an agreement or that you can use statewide doctrines that replace an actual agreement between a party and a counterparty. And here, what Libation is asking for is for you to use what it claims to be a universal ERISA doctrine, which I actually want to push back on for a moment, but it's asking you to use what it claims to be a universal ERISA doctrine, that there can be a unilaterally imposed plan term. The only party that is consented to arbitration here is the plan via the plan sponsor, and that's who's getting sued. So because the plan sponsor is the one who inserted the arbitration provision, and that's the defendant in this case, you don't have any kind of counterparty that you're substituting, even substituting consent for. So you don't actually have an agreement that you can even point to. I think that's the problem. And I don't think that this court, and I take your point, you know, that there was an agreement in the Conrad case between the trustees and Smith-Barney. But here, you don't even have that underlying agreement, right? This court said that there was an agreement, but the problem wasn't just that the participants weren't a party to it, it's that they hadn't agreed to arbitration at all. The trustees and the participant are actually aligned in that case against Smith-Barney. Nonetheless, this court said that the trustees' consent to arbitration isn't sufficient. So, I mean, the trustees can amend the plan, though. Yes. And there is this concept that, like, some claims at least are on behalf of the plan. And so in the sense that that makes the plan the adverse party here, I guess I am still having trouble with your argument. I think your argument is simply because the plaintiffs are bringing the claim. That somehow changes the analysis. So, I do think that that's right, Your Honor. I think the fact that the participants have the right to bring the A2 claim means that their consent matters as well. You have to have plan consent, but also participating consent. The general, you're looking to the FAA for that. You can't point us to any case that says that the participants also need to consent when they're bringing claims on behalf of the plan when the plan has consented. I can't point you to a case where the arbitration provision is located in the plan. But Comer was a case where the plaintiffs were suing on behalf of the plan, and this court said that their consent mattered. In Comer, the A2 claims were on behalf of the plan. The trustees in that case were not the defendants. It was Smith-Barney. The trustees had consented to arbitration. Smith-Barney tried to compel arbitration, and this court said no. And then how do you deal with Monroe? So, in Monroe, this court said that a participant's consent, that doesn't necessarily cover the plan's consent. I think Comer and Monroe, right together, tell you that for A2 claims, both the plan has to consent and the participant has to consent. Are you reading that into Monroe? Because I think Monroe just says, doesn't it just say that when the claim is on behalf of the plan, it's the plan's consent that we need? I don't think that's what the court is saying in Monroe, Your Honor. I think in Monroe the question was scope. This court held that the arbitration agreement didn't cover the A2 claim because an A2 claim is on behalf of the plan, and the participant's individual arbitration agreement couldn't cover that A2 claim. So, I think that it was about consent, but it was more about scope than about consent. Well, I don't want to say it wasn't about consent, but it was about scope. And I don't think the court could have overruled Comer there. I don't think that this court could have said that Bernstein's consent was irrelevant. I think what the court added was that plan consent was relevant. In Comer, of course, you had consent from the trustees, and in Monroe there wasn't plan consent. So, I think each of those two cases, there's a missing piece of consent, and they both matter. So, I know you wanted to reserve some time, and I would really like to hear your argument on the unconscionability piece. So, if you could address that, and then if you don't answer my question, I'll ask you. Yeah, absolutely. So, Judge Anderson ruled that unconscionability is unavailable entirely for plan provisions that mandate arbitration, and that can't be right. ARRESTA specifically, in 1144D, says that it is not intended to alter or modify other federal statutes, and that includes the FAA. The FAA specifically makes arbitration provisions amenable to state contract law defenses. And so, here, I think state contract law defenses apply as a matter of federal law, and so preemption is really not the right doctrine to talk about. We should be talking about 1144D, not 1144A. The fact that Judge Anderson wouldn't even consider it. We agree with you that the unconscionability defense is something that's valid and can be developed. What standard applies? What is the test? So, the test is a sliding scale between procedural unconscionability and subjective unconscionability, Your Honor. And I think that the place where we agree with Life Nation is that it would be appropriate to remand this to Judge Anderson to consider whether the clause is unconscionable or not. But that sliding scale applies, and I can talk to federal common law for the standard with respect to the development that we would instruct the lower court to do on remand. So, I think it could be either state law or federal common law. I think either one of them is available, but I think state law is a better answer. And the reason is that the FAA typically does subject the form manager arbitration clauses to state law defenses, general state law defenses. Here, of course, the plan has a choice of law provision, which is California law. And it says to the extent that it's not preempted, California law applies. So, there's a uniform body of state law that would govern unconscionability challenges to Life Nation's arbitration provision. And I think that's the right place to look because that's most consistent with the FAA. I don't think preemption is a problem. If you think that it is, then you can develop a body of federal common law on unconscionability doctrine. I think the important point, any federal common law that's been developed on unconscionability. I can't point you to a case, Your Honor. I do think there's a federal common contract law, though, that this court has recognized it does apply to the rest of the plans. And so, unconscionability would work. I know that I've reached my three minutes. I'm happy to answer any other questions or come back for rebuttal. Thank you. Let's take our time for rebuttal, then. Thank you. Good morning. May it please the Court, Sarah Adams on behalf of the defendants at police. Plaintiff is asking the court to do two things that no court has ever done. Number one, hold that a provision in an ERISA plan document is not valid unless each individual plan participant consents to it. And number two, apply common law unconscionability doctrines to set aside an ERISA plan term. What defendants are asking the court to do, on the other hand, is exactly what this court has already done in Dorman, enforce an individual arbitration provision contained within a 401k plan document. Dorman is not distinguishable, so plaintiffs try to brush it off because it's unpublished. But the underpinnings of Dorman are published. Dorman points to this court's published decision a year prior in Monroe, as Your Honor mentioned. And there, the court in Dorman referenced Monroe and said, we recently held that such claims belong to a plan. So I'm recommending you go to the published authority. So if you're going through Dorman, I recommend that that's not going to be very persuasive because it's unpublished. So try to talk about whatever the published authorities are. Sure. And before you do that, if you could go to my first question, which was why does arbitration apply to claims that arose before the arbitration clause was added in 2022? Because under ERISA, the plan document controls. And so the plan document governs all claims that are brought under the plan document. Is it a claims made basis rather than a claims accrued basis? I haven't seen courts use that kind of language, but that is a similar principle. And because the claims belong to the plan, which is what this court told us in Monroe, it doesn't matter when the individual participants came and went. Those are the plan's claims. And the plan has consented to have that provision apply as it's stated currently. And so this gets to my threshold question then. Do you disagree with the statement that some of the claims here are individual claims? Your Honor, I think, yes, to a degree. 502A2 claims, always plan claims. 502A3 claims, I think there are occasions when they can be styled individually. As plaintiff's counsel referenced, we're talking about the same operative set of facts. They're simply getting, and I wouldn't mean duplicative recovery or anything like that. We're simply looking at. But the question is, is there non-duplicative recovery in some way? So generally, 502A3 is thought of as, sometimes it's called a catch-all provision under ERISA, an avenue for equitable relief that might not be available under other provisions. So if you look at 502A3 or 29 U.S.C. 1132A3, what the relief that's being sought there, it's a suit to enjoin any act or practice which violates any provision of this chapter of ERISA or the plan. So that, to me, sounds like plan-wide remedies being sought, if you're going to enjoin whatever practice is at issue, whether it be to obtain other appropriate equitable relief. That's a situation where, in some cases, there could be an individual participant seeking equitable relief that only pertains to them. That's not the type of claims that are pled here. They're pleading a class that's all inherent in their claims, but affected in the same sort of way. So that is how I understood it. We can talk about it more at rebuttal, but if it is all claims on behalf of the plan, it seemed like you were not disputing that the plan needed to consent. So this question of whether there needs to be consent, I wasn't sure there was disagreement on it. It was just about who, and if it sounds like you think there does need to be consent, am I right about that? Your Honor, me personally, if I were writing from scratch, that might not be the approach I would take. But here in the Ninth Circuit, when we're applying Monroe, then yes, the plan needs to consent, and that's the proper way to look at it. And if you look at the facts of Monroe, and counsel is right, and I think it was helpful to point out that what the court in Monroe was talking about was the scope of that arbitration provision. And there, the arbitration provision was contained in employment agreements that the plan participants had outside of the plan. And the court said they had obligated them to arbitrate any claim that the employee had against the university. And this court said those claims don't fall within that scope because these employees don't have claims against the university. Those claims belong to the plan. And that is why counsel's statement that you need both types of consent is not correct because the Monroe court is saying those claims don't belong to the participants. So their consent is not required. Your Honor, I would like to, all of your honors, I would like to direct you just to one other point that I think is a little subtle, but I don't want to overlook in the plaintiff's reply brief. They introduced sort of a new idea that the plan provision regarding arbitration can't be treated like other plan provisions under ERISA because this provision violates ERISA, and they're referring to the exclusive jurisdiction of the federal courts there. But they don't seem to catch the implication of what that means. If it violates ERISA to have an arbitration provision in an ERISA plan, then that means ERISA claims aren't arbitral. And that's the exact opposite of what the holding was in the published portion of Dorman. And it's opposite to the holding of every other circuit court to ever consider the issue. And that cannot be. Let me speak briefly to the unconscionability issue. And that's the second area where the plaintiffs are asking the court to forge a new path. No court has ever struck down an ERISA plan provision on the basis of unconscionability. Counsel couldn't point us to any case where that has ever happened. And that's because ERISA completely preempts that type of argument. But this isn't a preemption argument. Is it because preemption is about preempting state law, and I think this would be federal common law, which I think even you acknowledged in your brief. If it's state law, it's preempted. If you're talking about federal, other types of common law, I would direct the court to the Supreme Court's decision in U.S. Airways v. McCutcheon where the court was faced with a situation considering whether the equitable defense of unjust enrichment could override an ERISA plan terms. And there the court said no. The plan, in short, is at the center of ERISA. And precluding McCutcheon's equitable defenses from overriding plain contract terms helps it to remain there. Now, this court's never applied that case to unconscionability as opposed to unjust enrichment. But there's no reason that the same analysis shouldn't apply. The plan is at the center, and ERISA doesn't count it introducing equitable defenses to try to get at the plan document. And it really – This isn't really about the terms of coverage. This is really – I mean, the arbitration clause is sort of a different type of plan term, isn't it? Because it's not really in the core of what ERISA is about, and it seems more like it's governed by the FAA, which does say that defenses are preserved. I would respectfully disagree, Your Honor. That distinction between substantive and procedural ERISA plan terms is something that is an idea of counsel. It's not reflected in the law anywhere, not in ERISA. And if you do – It seems like a lot of the things we're talking about today are not really in the law anywhere. I mean, some of these are novel questions, so I'm not sure that is really how different than everything else we have to decide today. Well, fair enough. But I think if you do look at the preemption, the actual preemption case law, you see state law preemption of claims procedures when different states try to say this is how you're going to bring a claim for benefits. So procedural, substantive, that's not a distinction that we see in the law. And that really goes back to the fundamental purpose of ERISA. Plaintiffs love to talk about how ERISA is meant to protect participants, and that is true, that is a purpose. But one of the fundamental motivators for enacting ERISA was to encourage plan sponsors to offer benefit plans in the first place. And to do that, Congress said we have to get rid of this morass of 50 states of different regulations and laws because what large corporation that covers all those states is ever going to bother to offer a benefit plan if that's what it has to wade through. And here when we're looking at questions around individual consent and saying every person has to consent or it's unconscionable to make a plan and apply it to people who came maybe before the provision came in, that is just simply unworkable under ERISA. For these benefits to be able to be offered to participants, there has to be a level of uniformity. And that's why the court's construction that it's the plan's consent that matters and makes perfect sense and keeps that whole ERISA structure intact. But don't we have two federal statutes here that we're trying to reconcile, ERISA and the FAA? And because of that, ERISA doesn't have any provisions dealing with arbitration, but the FAA does. And one of those is that you have to determine if there are any applicable contract offenses including unconscionability. And for that, it references either looking at state law or federal common law. And if under the principles of ERISA we shouldn't consider state law, shouldn't we be looking at federal common law? I don't think so, Your Honor. I think what the FAA actually says is an arbitration agreement can be set aside for any of the reasons that exist in law or at equity for setting aside a contract. So then I think you have to ask, what kind of contract is this? This is a special kind of contract. All of the case law that's discussing consent and negotiation and all those things, they're doing that because in most contracts, that's how the contract is formed. In the context of ERISA, and this is how these two statutes are harmonized, in the context of ERISA, the contractual arrangement, or if we're going to think of it with that construct, is formed simply because the plan sponsor, like the seller of a trust, establishes it for the benefit of the participants. There is no bargaining in many types of plans. There's no opting out in some types of plans. There's not even a requirement that they do anything or serve in any way to become eligible to participate. It's just granted by the settlor. And so the idea that maybe I didn't have noticed, I didn't understand, those don't even enter into it because of the special type of contract that an ERISA plan is. And I think in viewed that way, there's not a conflict between what the FAA says and what ERISA says. So that answer makes sense to me more for consent if you're talking about the plan as the only entity that needs to consent and the consent counts through the processes that allow them in. But I'm not sure it really addresses the unconscionability because the FAA preserves other defenses. And if there's an unconscionability argument, why is that not still there? Like when you were talking about consent, it sounded like you were talking about consent, not unconscionability. I do think there's some overlap. But there again, I would look at what the Supreme Court's telling us in U.S. Airways v. McCutcheon. That's simply not workable in the context of ERISA, that the ERISA plan document has to control. And so we can't bring in individual defenses. Because if the question is about, and the reason we're overlapping with notice is because they're talking about procedural unconscionability. So notice and understanding are elements there. That becomes a very individualized determination that is one that simply could not be made under ERISA with respect to tens of thousands of participants. Maybe the unconscionability analysis has to be done as to the plan, too. So why wouldn't it be that the way you look at unconscionability here would be that the procedural aspects maybe are easier to satisfy. Because they're about the plan and you amend the way you amend or whatever. But then there's still a substantive component. Because I think one of the most fundamental precepts of ERISA is that, as the Supreme Court likes to say, is a comprehensive and reticulated statute. Congress, in enacting ERISA, attempted to occupy the entire field of telling plan sponsors what is going into a plan. And when we're talking about saying, well, we don't like the way your arbitration provision works because it has this or that feature, that is the courts applying other law to upset the uniformity that Congress was trying to achieve in ERISA. I guess I'm still having trouble understanding. I can understand why you can't have 50 different states' laws. But when we're talking about federal common laws, there would be one answer for the whole country, whether you can arbitrate or not, this type of claim. Why is that a uniformity problem? I don't think it would be one answer, Your Honor. I think there are aspects of it that might be. But part of that analysis, if you have a sliding scale of procedural and substantive unconscionability, and when you're talking about plaintiffs are suggesting it's unconscionable that the plan term was added without notice, without response from the participants, then you are introducing individualized issues. And you would have to do that analysis. That is just they're wrong about how they're arguing that part of it. But that doesn't mean the whole unconscionability concept is gone, does it? This would be the first court to take that approach, if that's the case. But has there been a court that hasn't done that? Like, is there something reaching the opposite conclusion by a court? Or is it the first time that any court has considered the issue? I believe it's the first specific to unconscionability. Other equitable defenses, like the Supreme Court case I mentioned, this would follow along those same lines. Are there any other equitable defenses? I know you said that in Justice Richmond and McCutcheon was one. But what other cases have analogous defenses that may be helpful for us to look at when considering the unconscionability defense? I have not seen other equitable defenses raised in reverse cases for exactly the reasons I'm saying. This is the only one that the plaintiffs have brought up here. And we would agree on remand. My time is up. But if there's anything you'd like me to address on the actual substance of the unconscionability issues, I'd be happy to do that. Is there any reason? It doesn't sound like you disagree that if there needs to be an unconscionability analysis, that it should be done on remand instead of by us. That, I do agree. You could, where's my large binder? You do have the information where you could make that determination if you saw fit. But sitting as a court of review, the district court did not analyze any of those issues at all. And I think there's enough complexity and ambiguity in it that it makes sense. And also enough factual disputes, it seems. Yes, absolutely, Your Honor. And so I think it would make sense if we're in that situation to go back to the district court in the first instance. Thank you very much. Thank you. So if I could, Your Honor. So I'd like to start with what my friend called a new argument, but I don't think is necessarily a new argument that was introduced in reply. And the point where I want to start is the interaction between ERISA and the FAA. So the FAA is the only basis for arbitrating ERISA claims, and it's the sole authority for the existence of a mandatory arbitration provision in an ERISA plan. If we were looking only at ERISA, an arbitration provision would not be a legal plan term. So the court in McCutcheon, U.S. Airways, the first step of their analysis was to show that the provision that they were looking at was legal under ERISA. And only after determining that it was legal under ERISA did they then turn to the question of whether any unjust enrichment or federal common law type defenses were available. Here, the first step of the analysis has to be what makes the arbitration provision legal. That's the FAA. The FAA is what gives us authority to have an arbitration provision that applies to ERISA claims at all, whether it's in a plan or in an employment agreement or anywhere. Because the FAA carries with it the defense of unconscionability, it has to apply here. And I take Your Honor's point that perhaps it should be a federal common law rule. I do think that it's possible for it to be a rule guided by state law, especially because plans routinely include choice of law provisions. But a federal common law rule guided by state law would also be a sort of regular way of approaching interpretation of ERISA plans. This court in Dowdy applied federal common law, and that's post-U.S. Airways, to interpret an ERISA plan provision. It's not an arbitration provision, which I think is an important distinction that Life Nation isn't grappling with. And so I do think that's why we have to have at least consideration of whether unconscionability applies. I want to try again on consent, though, Your Honor, and here's how I'm going to take a shot at it. The FAA requires the existence of an agreement or a contract. There's no reason to allow a special form of a contract or a special contractual arrangement, which is essentially unilateral arbitration, to apply in this instance, because the Supreme Court has pushed back on that repeatedly in the FAA context. The Supreme Court does not allow state law doctrines which displace contractual consent. It doesn't allow those to exist under the FAA. There's no reason it would allow a special ERISA rule to displace an agreement requirement either. And the reason I think the plan's consent is insufficient, Your Honor, is because the plan's not contracting with anyone. The plan is a document, and the plan sponsor has inserted the arbitration provision. There's no party and counterparty that are agreeing. It's not the plan sponsor and the plan. They are one. So you really have the unilateral imposition of arbitration, which is unprecedented. I know you don't think this matters, but can you help me know whether you have a response to the argument that the A-3 claim here is really on behalf of the plan? Oh, so I think the reason the A-3 claim is not on behalf of the plan, Your Honor, is because the Supreme Court precedent which says that A-2 claims are brought in a representative capacity, but A-3 claims, even when they're seeking harm to the plan as a whole, the court has never called those representative capacity claims. So, for example, in LaRue most recently, the Supreme Court said A-2 claims are representative, but it's never called A-3 claims representative. And I may not be understanding your question, so I'm happy to try again. Your friend on the other side said A-3 claims kind of can come in two forms, and this one is really on behalf of the plan. So do you disagree with that, and if so, why? I disagree with that, Your Honor, because I think that the reason that A-2 claims are on behalf of the plan is because when you look at 1109, it talks about remedies that flow to the plan, and that's where the representative capacity comes from. A-3 doesn't have any similar language. It talks about a participant being able to bring a claim for appropriate equitable relief or injunctive relief. So I think that what my friend is doing is conflating the fact that there is plan-wide harm with the capacity in which the claim is brought. I don't think that any of the Supreme Court authority which talks about representative capacity ever talks about that in an A-3 capacity, and I want to say that LaRue distinguishes between A-2 and A-3 claims, and I might have that wrong, Your Honor, but I do think that the court there specified that there's a difference between A-2 and A-3 claims, and if not LaRue, then I think Verity also is a place where you could look and distinguish between those kinds of claims. I don't think that A-3 claims have ever been held by any court to belong to the plan. They might redress harm to the plan generally, but I don't think they've ever been held as being brought on behalf of the plan. There can be harm to plan assets that's redressed in A-3, but I think that that's different. So I sort of have that. Thank you. Thank you, Your Honor.  Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, DESAI, Schreier